# IN THE COURT OF APPEALS OF IOWA

No. 24-0744
Filed July 23, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**FRANCISCO JAVIER LOPEZ ESCOTO JR.,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Osceola County, Shayne Mayer, Judge.

A defendant appeals his conviction for second-degree sexual abuse. **AFFIRMED.**

Pamela Wingert of Wingert Law Office, Spirit Lake, for appellant.

Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.

Considered without oral argument by Ahlers, P.J., and Badding and Buller, JJ.

**AHLERS, Presiding Judge.**

A jury found Francisco Javier Lopez Escoto Jr. guilty of sexual abuse in the second degree, and he was sentenced accordingly.[1]  The victim of his crime is his ex-girlfriend's daughter, who was nine years old at the time of the abuse.

Lopez Escoto appeals.  He raises three issues.  He contends: (1) the evidence was insufficient to support his conviction; (2) the court abused its discretion in denying his motion for a new trial based on an alleged error on the verdict form, and (3) the exclusion of certain evidence violated his constitutional right to present a defense.  We address each argument in turn.

## I.      Sufficiency of the Evidence

Challenges to the sufficiency of the evidence are reviewed for correction of errors at law.  *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023).  A jury's verdict will be upheld if it is supported by substantial evidence—that is, evidence from which a rational factfinder could find the defendant guilty beyond a reasonable doubt. *Id.*  When assessing whether the evidence is sufficient to support the jury's verdict, we view the record in the light most favorable to the State, including all reasonable inferences and presumptions that may be fairly drawn.  *Id.*

The district court gave the jury a marshaling instruction for second-degree sexual abuse that required the State to prove: "(1) on or about the late spring to early summer of 2022, the defendant did commit a sex act with [the child]; and

---

[1] The jury found Lopez Escoto not guilty on a charge of dissemination and exhibition of obscene material to a minor.  As Lopez Escoto was acquitted on that charge, it is not an issue on appeal.

(2) the defendant performed the sex act while [the child] was under the age of 12 years." The jury instructions further defined "sex act" to mean any sexual contact:

1. By penetration of the penis into the vagina or anus.
2. Between the mouth of one person and the genitals of another.
3. Between the genitals of one person and the genitals or anus of another.
4. Between the finger or hand of one person and the genitals or anus of another person.

As Lopez Escoto did not object to the relevant jury instructions, they establish the law of the case for purposes of assessing his sufficiency-of-the-evidence challenge. *See State v. Schwartz*, 7 N.W.3d 756, 764 (Iowa 2024).

While Lopez Escoto does not identify a specific element he challenges, we interpret his brief as challenging the finding that he committed a sex act with the child. He focuses on the child's credibility. While acknowledging that credibility determinations are ordinarily reserved for the jury, he relies on what he contends is a limited exception "when the only evidence in support of a controlling fact is that of a witness who so contradicts himself as to render finding of facts thereon a mere guess." *State v. Mitchell*, 568 N.W.2d 493, 503 (Iowa 1997) (quoting *State ex rel. Mochnick v. Andrioli*, 216 Iowa 451, 453 (Iowa 1933)).

We question the viability of the limited exception mentioned in *Mitchell*. As an example of application of this limited exception, the *Mitchell* court pointed to *State v. Smith*, 508 N.W.2d 101 (Iowa Ct. App. 1993), in which the court of appeals reversed a conviction based on this limited exception. *Id.* But our supreme court has harshly criticized *Smith* and the principles upon which it is based as follows:

*Smith* is an outlier case. It has been criticized in the commentary, and it has not been followed in any sexual abuse case in Iowa since. The primary flaw in *Smith* is that it is inconsistent with the standard

of appellate review of jury verdicts, which requires that the evidence be viewed in the light most favorable to the verdict and which requires deference to the jury's resolution of disputed factual issues.

*State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022).

Given this criticism, we view any reliance on the limited exception mentioned in *Mitchell* or *Smith* to be shaky at best. But even if the limited exception were still alive, it would not apply here, as our review of the record does not support Lopez Escoto's characterization of the evidence.

Contrary to Lopez Escoto's efforts in painting the child's testimony as lacking in credibility, we do not see particularly contradictory testimony. And, even if there were inconsistencies, the jury was not required to conclude the child was not credible or to return a not guilty verdict. *See State v. Donahue*, 957 N.W.2d 1, 11 (Iowa 2021) ("Inconsistencies and lack of detail are common in sexual abuse cases and do not compel a jury to conclude that the victim is not credible or that there is insufficient evidence to support a guilty verdict."). So, we do not ignore the child's testimony, and her testimony alone is sufficient to constitute substantial evidence of Lopez Escoto's guilt. *See Mathis*, 971 N.W.2d at 518.

Having addressed Lopez Escoto's complaints about the child's credibility, we turn to the evidence. Viewing the evidence in the light most favorable to the guilty verdict, a reasonable juror could have found the following facts. Lopez Escoto lived with his girlfriend and her two children while the children were under the age of twelve. The girlfriend worked early in the morning and every other weekend, so Lopez Escoto spent extended periods of time alone with the children. Lopez Escoto sexually abused the older child at three different locations on their farm. There were times when Lopez Escoto and the child went to the wind turbine

or the barn alone together.  At these locations, Lopez Escoto would make the nine-year-old child suck his penis, and he sometimes pulled her hair while forcing her to do so.  The third location where the abuse occurred was in Lopez Escoto and the mother's bedroom.  While the mother was at work, Lopez Escoto would call the child into the room where he was already undressed.  He would tell the child to undress and again force her to suck his penis and testicles.  The child further testified that, in the bedroom, Lopez Escoto touched her vagina and attempted anal intercourse multiple times.  After the mother and children moved out of the home they shared with Lopez Escoto, the child disclosed the abuse.

Lopez Escoto's primary argument is that the child's testimony was inconsistent because she did not mention the incidents at the wind turbine or the barn during her deposition.  However, the child explained during trial that she had not been directly asked about those locations and confirmed both her deposition and trial testimony were truthful.  Given the nature of the child's testimony, her inability to provide an exact timeframe, precise location, or specific number of occurrences is reasonable and does not render her testimony insufficient to support a conviction.  *See Donahue*, 957 N.W.2d at 11.

Lopez Escoto also claims that the child's testimony is the only evidence supporting his conviction and argues her testimony was contradicted by his clear and consistent denial of the abuse.  Of course, the child's testimony is not required to be corroborated.  *See State v. Kraai*, 969 N.W.2d 487, 491 (Iowa 2022).  Nevertheless, it was.  The State presented evidence of a recorded phone call between Lopez Escoto and the child's mother.  When confronted by the mother about the child's disclosure, Lopez Escoto responded, "look, that's not how it

happened," and then added, "ask her why she would come over to the bed when you would be gone for work herself." The mother understood this as Lopez Escoto attempting to explain his conduct rather than denying it and as implying that the child initiated the contact. Lopez Escoto testified that the recording was taken out of context and that he was simply asking the mother to have the child come to the phone so he could hear the allegations firsthand. While the jury was free to believe either version of events, a reasonable juror could have interpreted the conversation the same way the child's mother did—as Lopez Escoto attempting to explain or justify, rather than deny, the abuse.

In the end, Lopez Escoto's sufficiency challenge amounts to a request for us to reweigh the evidence and substitute his interpretation for that of the jury—an action we cannot take. *See State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022). Viewing the evidence in the light most favorable to the jury's verdict, we find substantial evidence supports it.

## II. Motion for New Trial

Lopez Escoto contends the district court erred in denying his motion for new trial based on an alleged inconsistency in how the jury foreperson marked the verdict form. District courts have broad discretion in ruling on motions for new trial, and we review such decisions for an abuse of discretion. *State v. Markus*, No. 05-0155, 2005 WL 3478116, at *4 (Iowa Ct. App. Dec. 21, 2005) (reviewing denial of motion for new trial based on verdict form issue).

After the district court was informed that the jury had reached a verdict, it reconvened the parties and asked the jury to confirm that it had reached a

unanimous decision. The foreperson confirmed unanimity and handed the court this completed verdict form (with the foreperson signature redacted):

We, the jury, find the defendant, Francisco Javier Lopez Escoto, Jr.:

**As to Count I:**

    X   Guilty of the crime of Sexual Abuse in the Second Degree.

    ●   Not Guilty.

**As to Count II:**

    _____ Guilty of Dissemination and Exhibition of Obscene Material to a Minor.

    X   Not Guilty.

_____
Jury Foreperson

The court then directed the jury to listen as the court read the verdict. The court read from the verdict form aloud, stating that the jury had found Lopez Escoto guilty of sexual abuse in the second degree and not guilty of dissemination and exhibition of obscene material to a minor. The court then asked for a show of hands of jurors that agreed that the court's reading "is your verdict." All twelve jurors raised their hands. Lopez Escoto had not yet seen the form but, at the court's invitation, asked for the jury to be polled. The court polled the jury, asking each juror, "Is this your verdict?" All twelve jurors answered yes.

Lopez Escoto filed a motion requesting a new trial. In the motion, he argued that because there were marks beside "guilty" and "not guilty" on the verdict form relating to the sexual-abuse charge, there was an inconsistency and therefore doubt about what verdict the jury rendered. In support of this argument, he cites Iowa Rule of Criminal Procedure 2.22(6):

> If the jury renders a verdict that is in none of the forms specified in this rule, or renders a verdict of guilty in which it appears to the court that the jury was mistaken as to the law, or renders a verdict that is inconsistent, the court may direct the jury to reconsider it.

Lopez Escoto interprets this rule as imposing a duty on the court to clarify the jury's intent. However, the use of the word "may" confirms the decision to seek clarification is discretionary, not mandatory. In this case, the district court determined that clarification was unnecessary, as the verdict was not inconsistent but merely contained a marking error.

In denying the motion for new trial, the district court explained that, upon review of the verdict form, it viewed the mark next to "not guilty" on count I as an error in marking—not as an indication of juror confusion or inconsistency. The court also pointed out that its polling of the jury confirmed its interpretation of the marking on the verdict form, as each juror confirmed that the court's reading of the verdict form as a finding of guilt was the juror's verdict.

The Iowa Supreme Court has addressed anomalies with verdict forms in *State v. Garrett*. 516 N.W.2d 892 (Iowa 1994). In *Garrett*, the defendant was charged with burglary, which included the lesser-included offense of criminal trespass. *Id.* at 894–96. Although the instructions properly instructed on the lesser offense of criminal trespass, the verdict form for that offense referred to it as "criminal mischief." *Id.* at 895–96. The supreme court found that the district court had the authority to ignore the clerical error and accept the verdict. *Id.* at 896.

Here, it is evident that the jury intended to find Lopez Escoto guilty of sexual abuse in the second degree. In comparing the markings for the two counts, it is apparent that the jury foreperson used an "X" to mark the intended verdict for each

count, not the scribble found beside the not guilty line for the sexual-abuse charge. Furthermore, to the extent there was any ambiguity, it was cleared up by the events surrounding the reading of the verdicts. As noted, the court directed the jury to listen as it read the verdict forms; the court read the verdict form as a verdict of guilty on the sexual-abuse charge and not guilty on the second charge; all twelve jurors raised their hand in response to the court's question whether the verdict the court read was the jury's verdict; and each juror confirmed by individual polling that the verdict as read by the court was the juror's verdict. As such, we conclude that the district court did not abuse its discretion in denying Lopez Escoto's motion for new trial based on claimed inconsistencies or irregularities in the verdict.

Lopez Escoto further asserts that his due process rights were violated because he was not given an opportunity to be heard about the alleged marking error on the verdict form at a meaningful time—specifically, before the jury was discharged. We reject this claim. Due process did not require an immediate opportunity to address the issue. Here, Lopez Escoto was made aware of the alleged error and was given a full and fair opportunity to raise the issue in his motion for new trial. At that hearing, he was able to present evidence, make arguments, and be heard on the matter. That process was sufficient to satisfy constitutional due process requirements. *See State v. Hightower*, 8 N.W.3d 527, 539 (Iowa 2024) (noting the defendant received due process when the defendant had both notice and an opportunity to be heard).

## III. Motion to Admit Evidence

As to the final issue, Lopez Escoto contends the district court erred in excluding evidence of potential alternative perpetrators—individuals who had

access to the child and a history of sexual offenses—as a possible explanation for the child's knowledge of inappropriate sexual conduct. He contends the admission of this evidence was necessary to preserve his constitutional right to present a defense. *See State v. Clark*, 814 N.W.2d 551, 560–61 (Iowa 2012) (noting that the right to present a defense stems from the Sixth Amendment right to a fair trial and is also protected by the Due Process Clause).

Rulings on the admissibility of evidence are typically reviewed for an abuse of discretion. *State v. Montgomery*, 966 N.W.2d 641, 649 (Iowa 2021). However, because Lopez Escoto contends the ruling violated his constitutional right, our review is de novo. *Id.*

Lopez Escoto's challenge relies on *State v. Montgomery*, in which our supreme court held that evidence of a child being abused by another individual is relevant and material to a defendant's claim of mistaken identity or false accusation. 966 N.W.2d at 656. Lopez Escoto contends the facts here are the same as in *Montgomery*, emphasizing that the jury did not convict him on all counts and that the district court excluded evidence of other individuals who previously had access to the child. However, *Montgomery* is easily distinguishable.

In *Montgomery*, there was uncontroverted evidence that a third party had abused the child, the abuse by the third party happened near in time to the defendant's alleged abuse of her, and the defense intended to call an expert to opine that the abuse by the third party influenced the victim's testimony. *Id.* In marked contrast, Lopez Escoto fails to allege—let alone establish—that any of the individuals he identifies abused the child, when they abused the child, or the nature of any abuse. The evidence of alternative perpetrators that Lopez Escoto sought

to introduce merely suggested that the third parties had access to the child. He proposed no evidence indicating actual abuse. With no evidence of a previous inappropriate encounter with or sexual abuse by any of the third parties, the evidence is merely speculative. *See State v. Walker*, 935 N.W.2d 874, 877–78 (Iowa 2019) (holding "there must be some evidence of a prior encounter with someone other than the defendant" before evidence of alternative perpetrators can be introduced). Evidence of mere access does not establish an explanation for the child's inappropriate sexual knowledge. Admitting such evidence would have required the jury to speculate about whether the third parties abused the child, when the issue before the court was Lopez's conduct. *See id.* at 878 ("[T]he proposed evidence would have merely confused the issues, misled the jury, and created multiple trials within the trial."). As there was no evidence of an inappropriate encounter with or sexual abuse by any third party, the district court did not abuse its discretion in excluding Lopez Escoto's proposed evidence of third parties having access to the child.

As to Lopez Escoto's constitutional claim, our supreme court has favorably considered a five-factor test to establish a constitutional right to present otherwise excluded evidence for the purpose of proving an alternative source for a child's sexual knowledge. *See Montgomery*, 966 N.W.2d at 657 (citing *State v. Pulizzano*, 456 N.W.2d 325, 335 (Wis. 1990)). To satisfy the test, a defendant must make an offer of proof showing (1) the prior acts occurred; (2) the acts closely resembled those of the present case; (3) the prior act is clearly relevant to a material issue; (4) the evidence is necessary to the defendant's case; and (5) the probative value of the evidence outweighs its prejudicial effect. *Id.* Here, Lopez Escoto failed to

present evidence via an offer of proof that the third parties abused the child (factor one), any actions by the third parties closely resembled the abuse Lopez Escoto was alleged to have inflicted (factor two), any actions were clearly relevant to Lopez Escoto's guilt (factor three), or the probative value of the evidence of third parties having access to the child outweighed the prejudicial effect of the evidence (factor five). As Lopez Escoto failed to meet at least four of the five factors, the exclusion of the evidence of third parties having access to the child did not violate his constitutional right to present a defense.

The district court did not violate Lopez's constitutional right and properly exercised its discretion in excluding the proposed evidence.

## IV. Conclusion

Sufficient evidence supports Lopez Escoto's conviction for sexual abuse in the second degree. The district court did not abuse its discretion in denying his motion for new trial due to alleged problems with the verdict form. The district court did not abuse its discretion or violate Lopez Escoto's right to present a defense by excluding evidence of third parties having access to the child. Accordingly, we affirm.

**AFFIRMED.**